**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES OAKLEY | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | COMPLAINT FOR: |
| | ) | |
| | ) | 1. Breach of Fiduciary Duty |
| | ) | 2. Negligence |
| STEVE BELSER, an individual; ROCK | ) | 3. Intentional Misrepresentation |
| CAPITAL ENTERTAINMENT, LLC, an | ) | 4. Negligent Misrepresentation |
| Illinois limited liability company; PEE | ) | 5. Breach of Contract |
| BEE EYE, LLC, an Illinois limited liability | ) | 6. Violation of Civil Code Section |
| Company; and DOES 1 through 10, | ) | 7. Unfair Business Practices |
| Inclusive, | ) | 8. Unjust Enrichment |
| | ) | 9. Accounting |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, CHARLES OAKLEY ("Plaintiff"), by and through his attorney(s), The Law Office of Raed Shalabi, Ltd., hereby complains against Defendants, STEVE BELSER, an individual, ROCK CAPITAL ENTERTAINMENT, LLC, an Illinois limited company, PEE BEE EYE, LLC, an Illinois limited liability company, and DOES 1 through 10, inclusive, (hereinafter referred to as "Defendants"), and states as follows:

**INTRODUCTION**

1. This case arises out of the bad-faith and fraudulent actions of defendant STEVE BELSER ("Belser") with respect to his gross mismanagement and misappropriation of approximately one million ($1,000,000.00) in capital that was entrusted to him by Plaintiff Charles Oakley. Taking advantage of the trust that Oakley had placed in him, and with the promise of significant returns, Belser induced Oakley to invest this substantial amount of money in two different companies for the purpose of

funding two motion pictures and a real estate venture. However, although Belser repeatedly represented that Oakley would become a partner in those companies and share in the profits. Belser failed to provide Oakley with any documentation to show such a partnership interest and Belser was in fact the only person who had and legal interest in either of the companies.

2. The money Oakley provided to Belser, which Belser's two companies used to fund the production of two motion pictures had apparent success at the box office and ancillary sales. Although Oakley is informed and believes that Belse and his companies use Oakley's name, image and likeness to their economic advantage, Oakley has neither seen a return on his investment nor any documentation regarding his participation in the profits of the pictures of the use of his money.

3. Belser induced Oaklaey to give him additional funds on the promise that it would be invested in real estate that would eventually be sold and the profits be split with Oakley. However, Oakley is informed and believes Belser used the additional funds for his own personal purposes and fund Belser's extravagant lifestyle.

4. As a result of Belser's wrongful conduct, Oakley has not only lost the total amount of his investment, but also the opportunity to invest that money in other potentially lucrative business ventures. Accordingly, Oakley seeks to recover all damages and remedies available and proximately caused by Belser's wrongful conduct. In addition, Oakley seeks to disgorge Belser of any financial gains that he unjustly received through his wrongful conduct. Finally, Oakley seeks an account to ascertain precisely how his money was used by Belser, and to determine the present location of his money.

**PARTIES**

5. Plaintiff, Charles Oakley, is and at all relevant times was a resident of Ohio.

6. Defendant Belser is, and at all relevant times was, an individual residing the state of Illinois.

7. Defendant Rock Capital Entertainment, LLC is, and at all times relevant hereto was, an Illinois limited liability company. Defendant Belser is the sole member of the company.

8. Defendant Pee Bee Eye, LLC is, and at all times relevant hereto was, an Illinois limited liability company. Defendant Belser is the sole member of the company.

9. Upon information and belief and based thereon alleges that pursuant to Illinois Code of Civil Procedure 735 ILCS F/2-401(e), the fictitiously named defendants sued herein as Does 1 through 20, inclusive, and each of them, were in some manner responsible or legally liable for the actions, events, transactions and occurrences alleged herein. The true names and capacities of such fictitiously named defendants whether individual, corporate, associate or otherwise, are presently unknown to Oakley, and Oakley will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously named defendants when the same have been ascertained. For convenience, each reference to a named defendant herein shall also refer to the Doe defendants, and each of them.

10. Upon information and belief and based on theron alleges that at all material times each defendant was the agent, employee, partner, joint venture, co-conspirator, and/or employer of the other defendants and was at all times herein mentioned acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture. Oakley is further informed and believes and

thereon alleges that the acts and conduct herein alleged of each defendant was known to, authorized by and/or ratified by the other defendants, end each of them.

## FACTUAL BACKGROUND

11. Oakley is a former professional basketball player. Oakley first met Belser in [year]. Belser was a senior financial advisor working for Private Bank in Chicago, Illinois. Oakley sought Private Bank's services to assist in managing his finances.

12. Belser served as Oakley's personal banker and avisor at Private Bank from [year to year], at which time Belser left the employ of the bank. During this period, Belser managed approximately one million ($1,000,000) of Oakley's money, and Oakley faithfully trusted Belser with the investment of this money in various portfolios.

## NEXT DAY AIR INVESTMENT

13. In early [year], Oakley was approached by third parties with the opportunity to invest [amount$$] in a feature motion picture entitled *Next Day Air*. Accordingly, he asked Belser to assist him in evaluating that investment opportunity. Rather than simply evaluating the investment opportunity, however, Belser convinced Oakley to provide the [$$amount] investment to the producers of *Next Day Air* through a company named Rock Capital Holdings.

14. Specifically, in or around [month and year], Belser represented to Oakley that the two of them would be partners in a company called Rock Capital Holdings that Belser would set and that both would share equally in the anticipated profits from *Next Day Air*. Belser represented that if Oakley would provide him with the [$$amount] capital contribution, Belser would take care of setting up Rock Capital Holdings as a partnership

and oversee the negotiation on Oakley's behalf of Oakley's profit participation in *Next Day Air*.

15. Relying on Belser's representations, Oakley entrusted Belser with his [$$amount] instead of investing it directly with the third parties who had initially approached him about *Next Day Air*.

16. However, Belser's representations were false. Specifically, although Belser did set up a company called Rock Capital Holdings through which to invest Oakley's [$$amount] in *Next Day Air*, Rock Capital Holdings was a limited liability company, not a partnership. Moreover, Belser was the only member of the company. Belser fraudulently concealed from Oakley the fact that Oakley did not have any formal membership interest in Rock Capital Holdings, LLC. Rock Capital Holdings, LLC was involuntarily dissolved in December 2010.

17. *Next Day Air* earned approximately $10 million in theaters, and it has been released on DVD and aired on cable television. However, despite its apparent success at the box office and its ancillary sales, Oakley has neither seen a return of his [$$amount] nor any profit participation statements. Moreover, Belser has failed to provide Oakley with any documentation demonstrating Oakley's legal or equitable interest in Rock Capital Holdings despite the fact that it was Oakley's capital contribution that was used by Rock Cpaital Holdings to partially fund *Next Day Air*.

## PASTER BROWN INVESTMENT

18. Subsequently, in or around [month and year] Belser approached Oakley with the opportunity to invest an additional [$$amount] in another feature motion picture entitled *Pastor Brown*, for which Belser was an executive producer. Belser represented that he

had recently set up another partnership, this time called Rock Capital Entertainment, in which Oakley would become a partner, and through which he would invest Oakley's [$$amount]. He also represented that Oakley, as a partner in Rock Capital Entertainment, would earn at least [20%] return on his investment and would share all profits generated by *Pastor Brown*. Relying on these representations, Oakley provided Belser with a [$$] capital contribution.

19. However, once again, Belser's representations were false. Specifically, although Belser had formed Rock Capital Entertainment, the company was a limited liability company in which Belser was the sole member and in which Oakley had no legal interest. Belser fraudulently concealed this fact from Oakley, and failed to provide Oakley with any type of documentation to show Oakley's interest, legal or equitable, in Rock Capital Entertainment.

20. Upon information and belief, Belser used Oakley's money to fund the lion's share of the production costs for *Pastor Brown.* Specifically, Livingston is informed and believes that all three defendants, without his permission and without providing any compensation to him, relied upon the use of his name, image, and/or likeness to represent to thirst parties that *Pastor Brown* had legitimate and substantial financial partners. As a result of these unauthorized representations, all three defendants were able to obtain additional financing for *Pastor Brown* and enter various production agreements that otherwise would have not been a possibility.

21. Oakley is further informed and believes that Belser, along with defendants Rock Capital Entertainment, LLC, and Pee Bee Eye, LLC, used his name, image, and/or likeness for their benefit in the development and production of *Pastor Brown*.

Specifically, Oakley is informed and believes that all three defendants, without his permission and without providing any compensation to him, relied upon the use of his name, image, and/or likeness to represent to third parties that Pastor Brown had legitimate and substantial financial partners. As a result of these unauthorized representations, all three defendants were able to obtain additional financing for *Pastor Brown* and enter into various production agreements that otherwise would have not been a possibility.

## REAL ESTATE INVESTMENT

22. In or around [month year], at the same time that Belser induced Oakley to invest [$$amount] in *Pastor Brown*, Belser also induced him to invest [$$amount] in a real estate venture to be operated under Rock Capital Holdings-an entity in which Oakley already believed himself to be a partner. Belser represented that Oakley's money would be invested in real estate that would be eventually sold and the profits split with Oakley as a partner in Rock Capital Holdings. Relying on these representations, Oakley provided Belser with an additional [$$amount].

23. Once again, however, Belser's representations were false. Not only did Belser continue to retain the only membership interest in Rock Capital Holdings, LLC, but Oakley is informed and believes that Belser used his [$$amount] investment for personal purposes. Specifically, instead of investing the money in real estae, Oakley is informed and believes that belser merely used the money to fund his extravagant lifestyle. As a result, Oakley has lost the totle amount of his [$$amount] investment.

## DISCOVERY OF FRAUD

24. Oakley did not discover the falsity of Belser's numerous misrepresentations until [month year], at white point her first learned that one of the producers of Pastor Brown had obtained a judgment against Belser and Pee Bee Eye, LLC, related to the production of *Pastor Brown*. Prior to this time, Oakley had no reason to doubt Belser, who had gained his confidence and trust while at Private Bank. Indeed, as Belser also managed the finances of other professional basketball players, and as Belser had been introduced to Oaklaey, Oakley reasonably believed that Belser was a trustworthy individual. Moreover, Belser repeatedly reassured Oakley that he had been made a partner in Rock Capital Holdings and Rock Capital Entertainment, and that his money was being effectively managed.

25. Belser's schemed to defraud Oakley and used his position to take advantage of Oakley and convince him to part with his initial investment in *Next Day Air*, his greed was whetted with the notion that he could convince Oakley to part with an additional amount. As a result of Belser's fraudulent conduct and abuse of Oakley's trust, Oakley has now lost approximately $1,000,000.00 that he entrusted to Belser.

## COUNT I
### (Breach of Fiduciary Duty- Against All Defendants)

26. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1-through 25, inclusive, of this Complaint as if fully set forth herein.

27. As Oakley's financial advisor, the person to whom Oakley entrusted approximately $1,000,000.00 and as Oakley's purported partner in Rock Capital Holdings and Rock Capital Entertainment, Belser owed a fiduciary duty to Oakley not to engage in any act or omission that would harm Oakley in any manner or decrease or

diminish Oakley's expected benefits as an investor and/or purported partner. This duty included, among other things, the duty to act in good faith towards Oakley, to treat Oakley with complete fairness, to disclose all material facts to Oakley concerning the investment of Oakley's money and the operation of the purported partnerships and to refrain from seeking any undue advantage in Oakley's business or affairs through conduct misrepresentation, concealment, breach of contract or duty, threat or adverse pressure of any kind.

28. By taking the wrongful actions alleged above, including, but not limited to:

   a) Misrepresenting that Oakley was a partner in Rock Capital Holdings and Rock Capital Entertainment, while actually granting himself the only membership interest in both companies;
   b) Failing to provide Oakley with any documentation demonstrating Oakley's legal or equitable interest in Rock Capital Holdings and Rock Capital Entertainment, despite the fact that it was Oakley's capital contribution that was used to fund both companies;
   c) Failing to provide Oakley with any profit participation statements for *Next Day Air;*
   d) Failing to provide Oakley with an accounting for *Pastor Brown;*
   e) Misappropriating Oakley's real estate investment money for personal use, and;
   f) Generally failing to act in the best interests of Oakley, Belser breached his fiduciary duties to Oakley.

29. As a direct and proximate result of Belser's breaches of his fiduciary duties, Oakley has suffered damages in an amount to be proven at trial, but not less than [$$amount]

30. Oakley is informed and believes and based thereon alleges that Belser in doing the things herein alleged acted willfully, maliciously, oppressively and despicable with the full knowledge of the adverse effect of his actions on Oakley, and with willful and deliberate disregard of the consequences to Oakley. By reason thereof, Oakley is entitled

to recover punitive and exemplary damages from Belser in an amount to be determined at the time of trial.

## COUNT II-
### (Negligence- Against Defendant Belser)

31. Oakley, repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 30, inclusive, of this complaint as if fully set forth herein.

32. As Oakley's financial advisor, the person to whom Oakley entrusted approximately [$$amount], and as Oakley's purported partner in Rock Capital Holdings and Rock Capital Entertainment, Belser owed a duty of care to Oakley not to engage in any act or omission that would harm Oakley in any manner or decrease or diminish Oakley's expected benefits as an investor and/or purported partner.

33. By taking the wrongful actions alleged above, including:

   a. Misrepresenting that Oakley was a partner in Rock Capital Holdings and Rock Capital Entertainment, while actually granting himself the only membership interest in both companies;

   b. Failing to provide Oakley with any documentation demonstrating Oakley's legal or equitable interest in Rock Capital Holdings and Rock Capital Entertainment, despite the fact that it was Oakley's capital contribution that was used to fund both companies;

   c. Failing to provide Oakley with any profit participation statements for *Next Day Air*

   d. Failing to provide Oakley with an accounting for *Pastor Brown;*

   e. Misappropriating Oakley's real estate investment money for personal use, and

   f. Generally failing to act in the best interests of Oakley, Belser made an extreme departure from the care that a reasonably prudent person would have taken to prevent harm to Oakley.

34. As a direct and proximate result of Belser's grossly negligent actions, Oakley has suffered damages in an amount to be proven at trial, but not less than [$$amount].

## COUNT III
### (Intentional Misrepresentation- Against Defendant Belser)

35. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 34, inclusive of this Complaint as if fully set forth herein.

36. In or around [month year], Belser represented to Okaley that the two of them would be partners in a company called Rock Capital Holdings that Belser would set up and that both would share equally in the anticipated profits from the feature motion picture *Next Day Air*. Belser also represented that if Oakley would provide him with the capital contribution, Belser would take care of setting up Rock Cpaital Holdings as a partnership and oversee the negotiation on Oakley's behalf of Okaley's profit participation in *Next Day Air*.

37. Moreover, Belser represented to Oakley that he had set up a partnership called Rock Capital Entertainment, through which he would invest on Oakley's money in *Pastor Brown*. He also represented that Oakley, as a partner in Rock Capital Entertainment, would earn at least a [20%] return on his investment and would share all profit generated by *Pastor Brown*.

38. Furthermore, in or around [month year] Belser represented to Oakley that [$$amount] of Oakley's money would be invested through Rock Capital Holdings in real estate that would be eventually sold and the profits split with Oakley.

39. The foregoing representations were false. Specifically, at the time Belser made theforegoing representations to Oakley, he either had no intention of (1) making Oakley a

partner in Rock Capital Holdings and Rock Capital Entertainment, (2) sharing any profits with Oakley, and/or (3) investing Oakley's money in real estate, or otherwise made the aforesaid representations recklessly and without regard for the truth. To the contrary, Belser made himself the sole member of Rock Capital Holdings, LLC and Rock Capital Entertainment, LLC, failed to provide Oakley with a return of his investment or any share of profits, and used Oakley's real estate investment for his own personal purposes.

40. Belser made the foregoing representations with the intention that Oakley rely thereon and in order to induce Oakley to act in reliance on those representations, and Oakley did in fact reasonably and justifiably rely on these representations to his detriment by providing Belser with approximately $1,000,000.00 in funds that he otherwise would have invested with other parties and in other business ventures.

41. As a direct and proximate result of Belser's fraudulent misrepresentations, Oakley has suffered damages in an amount to be proven at trial.

42. Oakley is informed and believes and based thereon alleges that Belser in doing the things herein alleged acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of his actions on Oakley, and with willful and deliberate disregard of the consequences to Oakley. By reason thereof, Oakley is entitled to recover punitive and exemplary damages from Belser in an amount to be determined at the time of trial.

**COUNT IV**
**(Negligent Misrepresentation-Against Defendant Belser)**

43. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 42, inclusive of this Complaint as if fully set forth herein.

44. Belser represented to Oakley that two of them would be partners in a company called Rock Capital Holdings that Belser would set up and that both would share equally in the anticipated profits from the feature motion picture *Next Day Air*. Belser also represented that if Oakley would provide him with the capital contribution, Belser would take care of setting up Rock Capital Holdings as a partnership and oversee the negotiation on Oakley's behalf of Oakley's profit participation in *Next Day Air*.

45. Belser represented to Oakley that he had set up a partnership called Rock Capital Entertainment, through which he would invest approximately $1,000,000.00 on Oakley's money in *Pastor Brown*. He also represented that Oakley, as a partner in Rock Capital Entertainment, would earn at least a [20%] return on his investment and would share all profits generated by *Pastor Brown*.

46. Furthermore, Belser represented to Oakley that Oakley's money would be invested through Rock Capital Holdings in real estate that would be eventually sold and the profits split with Oakley.

47. At the time Belser made the foregoing representations to Oakley, he had no reasonable grounds for believing that the representations were true.

48. Belser made the foregoing representations with the intention that Oakley rely thereon and in order to induce Oakley to act in reliance on those representations, and Oakley did in fact reasonably and justifiably rely on those representations to his detriment by providing Belser with approximately $1,000,000.00 in funds that he otherwise would have invested with other parties and in other business ventures.

49. As a direct and proximate result of Belser's negligent misrepresentations, Oakley has suffered damages in an amount to be proven at trial.

## COUNT V
**(Breach of Contract-Against Defendant Belser)**

50. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 49, inclusive, of this Complaint as if fully set forth herein.

51. Through the conduct alleged hereinabove, Oakley and Belser entered into three separate implied contracts. First, Oakley agreed to provide Belser with a $1,000,000.00 capital contribution as consideration for Belser's promise to provide Oakley with an equal share of the profits from *Next Day Air*. Second, Oakley agreed to provide Belser with a $1,000,000.00 capital contribution as consideration for Belser's promise to provide Oakley with a [20%] return on his investment and a share of all profits generated by *Pastor Brown*. Third, Oakley agreed to provide Belser with a capital contribution in exchange for Belser's promise to invest that money in real estate that would eventually be sold and the profits split with Oakley.

52. By providing Belser with the agreed upon capital contributions, Oakley has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of all three contracts.

53. By taking the actions alleged hereinabove, including (1) failing to provide Oakley with an equal share of the profits from *Next Day Air,* (2) failing to provide Oakley with a [20%] return on his investment in *Pastor Brown* and a share of all profits generated by that motion picture, and (3) failing to invest Oakley's money in real estate that would eventually be sold and the profits split with Oakley and instead misappropriating that money for his own personal use, Belser has materially breached the implied terms of all three contracts and the implied covenant of good faith and fair dealing.

54. As a direct and proximate result of the aforesaid breaches, Oakley has suffered damages in an amount to be proven at trial.

## COUNT VI
### (Breach of Contract- Against Defendant Rock Capital Entertainment, LLC)

55. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 54, inclusive, of this Complaint as if fully set forth herein.

56. Through the conduct alleged hereinabove, Oakley and Rock Capital Entertainment, LLC entered into an implied contract pursuant to which Oakley agreed to provide Rock Capital Entertainment, LLC with a $1,000,000.00 capital contribution in exchange for a [20%] return on his investment and a share of all profits generated by *Pastor Brown.*

57. By providing Rock Capital Entertainment, LLC with the agreed upon capital contribution, Oakley has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the contract.

58. By taking the actions alleged hereinabove, including failing to provide Oakley with a [20%] return on his investment in *Pastor Brown* and a share of all profits generated by that motion picture, Rock Capital Entertainment, LLC has materially breached the implied terms of the contract and the implied covenant of good faith and fair dealing.

59. As a direct and proximate result of the aforesaid breaches, Oakley has suffered damages in an amount to be proven at trial.

## COUNT VII
### (Breach of Contract- Against Defendant Pee Bee Eye, LLC)

60. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 59, inclusive, of this Complaint as if fully set forth herein.

61. Through the conduct alleged hereinabove, Oakley and Pee Bee Eye, LLC. entered into an implied contract pursuant to which Oakley agreed to provide Pee Bee Eye, LLC with a capital contribution in exchange for a [20%] return on his investment and a share of all profits generated by *Pastor Brown.*

62. By providing Pee Bee Eye, LLC with the agreed upon capital contribution, Oakley has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the contract.

63. By taking the actions alleged hereinabove, including failing to provide Oakley with a [20%] return on his investment in *Pastor Brown* and a share of all profits generated by that motion picture, Pee Bee Eye, LLC has materially breached the implied terms of the contract and the implied covenant of good faith and fair dealing.

64. As a direct and proximate result of the aforesaid breaches, Oakley has suffered damages in an amount to be proven at trial.

## COUNT VIII
### (Violation of 765 ILCS 1075/ Right of Publicity Act)

65. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 64, inclusive, of this Complaint as if fully set forth herein.

66. As alleged herein above, all defendants, knowingly and without Oakley's prior consent, appropriated Oakley's name, image, and/or likeness photographs for their own benefit in the development and production of *Pastor Brown*. Specifically, Oakley is

informed and believes that all defendants relied upon the use of his name, image, and/or likeness to represent to third parties that *Pastor Brown* had legitimate and substantial financial partners. As a result of these unauthorized representations, all three defendants were able to obtain additional financing for *Pastor Brown* and enter into various production agreements that otherwise would have not been a possibility.

67. The appropriation by all defendants was directly connected to their commercial purpose in developing and producing *Pastor Brown*.

68. As a direct and proximate result of the aforesaid appropriation of Oakley's name, image, and/or likeness, Oakley has suffered damages in an amount to be proven at trial, but exceeding the jurisdictional limits of this Court. Additionally, Oakley is entitled to recover any profits that any defendant received from the use of Oakley's name, image, and/or likeness.

69. Oakley is informed and believes and based thereon alleges that all three defendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of their actions on Oakley, and with willful and deliberate disregard of the consequences to Oakley. By reason thereof, Oakley is entitled to recover punitive and exemplary damages from all three defendants in an amount to be determined at the time of trial.

### COUNT IX
**(Consumer Fraud and Deceptive Business Practices- 815 ILCS 505/1 et seq.)**

70. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 69, inclusive, of this Complaint as if fully set forth herein.

71. Belser's actions and practices, as hereinabove alleged, constitute unfair, deceptive misleading business practices prohibited by Illinois statute 815 ILCS 505/1 et seq. Oakley is informed and believes and based thereon alleges that Belser has utilized certain improper, unlawful and tortious means as herein alleged to unjustly enrich himself and to cause deliberate injury to Oakley.

72. Oakleu is therefore entitled to an order restoring to him all of his interest in monies that were acquired by Belser by means of any unlawful practice hereunder, in an amount to be proven at trial.

## COUNT X
### (Unjust Enrichment- Against Defendant Belser)

73. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 72, inclusive, of this Complaint as if fully set forth herein.

74. As a result of the wrongful acts Belser, as herein alleged, Belser has been unjustly enriched and benefitted at the expense of Oakley. Such unjust enrichment and benefits include, but are not limited to, the misappropriation of virtually all of the approximately [$$amount] that Oakley entrusted to Belser based upon Belser's representations that the funds would be used for Oakley's benefit, when in fact, such funds were misappropriated by Belser and used for his own personal use and benefit and/or for the use and benefit of companies for which Belser was the only member.

75. In order to avoid Belser from being unjustly enriched, Oakley is entitled to restitution in an amount to be proven at trial.

## COUNT XI
### (For an Accounting- Against All Defendants)

76. Oakley repeats, realleges, adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 75, inclusive, of this Complaint as if fully set forth herein.

77. As described above, Oakley entrusted Belser to manage and invest approximately [$$amount] of his money, and entrusted Rock Capital Entertainment, LLC and Pee Bee Eye, LLC with approximately $1,000,000.00 of his money. An accounting is therefore necessary to ascertain how all three defendants used these funds, to determine their current whereabouts, and to calculate all amounts currently due and owing to Oakley.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff has suffered and/or will continue to suffer damages and prays for judgment against Defendants. Plaintiff prays for general, special damages, restitution, exemplary and punitive damages in a sum in excess of $1,000,000.00.

Respectfully Submitted,

/s/Raed Shalabi
Raed Shalabi

The Law Offices of Raed Shalabi, Ltd
Raed Shalabi
15127 S. 73rd Avenue, Unit A-1
Orland Park, Illinois 60462
RaedShalabi@yahoo.com
Atty No. 6290732
708.671.0800